IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAMON D. THOMAS, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-18-896 |
| FRANK BISHOP and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Lamon D. Thomas's Petition for Writ Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). This matter is ripe for review, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018); see also R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (holding petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons outlined below, the Court will deny the Petition and decline to issue a certificate of appealability.

### I.   BACKGROUND

**A.   State Court Proceedings**

In 2014, a jury in the Circuit Court for Allegany County, Maryland convicted Petitioner Lamon D. Thomas of attempted first-degree murder, reckless endangerment, first-degree assault on an inmate, wearing and carrying a dangerous weapon with intent to injure, and possession of a weapon while incarcerated, in relation to the stabbing of a fellow

inmate at North Branch Correctional Institution ("NBCI"). (See Limited Answer to Pet. Writ Habeas Corpus ["Limited Answer"] Ex. 1 ["Cir.Ct. Docket"], ECF No. 4-1; Limited Answer Ex. 4 ["Md.Ct.Spec.App. Op."] at 2, ECF No. 4-4).[1] Thomas was sentenced to nine years' imprisonment for possession of a weapon while in a place of confinement and a consecutive term of thirty years' imprisonment for attempted first-degree murder. (Md.Ct.Spec.App. Op. at 2 n.1).

Thomas appealed his convictions to the Maryland Court of Special Appeals, arguing that the evidence was insufficient to sustain his convictions "because the State failed to prove that [Thomas] possessed the weapon used to injur[e]" the victim. (Limited Answer Ex. 2 ["Appellant's Br."] at 10, ECF No. 4-2). On December 21, 2015, the Court of Special Appeals affirmed the judgment of the Circuit Court in an unreported opinion. (Md.Ct.Spec.App. Op. at 8–9). Thomas filed a petition for writ of certiorari, which was denied by the Court of Appeals of Maryland on March 28, 2016. (Id. at 10–12, 22).

On March 13, 2017, Thomas filed a petition for post-conviction relief asserting that: (1) trial counsel was ineffective for failing to object to his right to be present during voir dire; and (2) appellate counsel was ineffective for failing to raise as plain error the denial of his right to be present at every stage of the trial. (Limited Answer Ex. 5 ["Post-Conviction Op."] at 1, ECF No. 4-5). The Circuit Court for Allegany County denied Thomas' post-conviction petition on July 13, 2017. (Id. at 3). Thomas' application for leave

---

[1] Citations refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

to appeal was summarily denied by the Court of Special Appeals on January 12, 2018. (Id. at 8–10).

B.   **Federal Habeas Petition**

Thomas filed his Petition in the present case on March 28, 2018. (ECF No. 1). In his Petition, Thomas seeks federal habeas relief on three grounds: (1) trial counsel was ineffective for failing to object to his right to be present during voir dire; (2) appellate counsel was ineffective for failing to raise as plain error the denial of his right to be present at every stage of the trial; and (3) the State committed a Brady[2] violation by suppressing evidence. (Pet. at 5, ECF No. 1).

Respondents filed a Limited Answer to the Petition on May 15, 2018. (ECF No. 4). The Limited Answer argued that Thomas' Brady claim was unexhausted; therefore, unless Thomas agreed to withdraw the Brady claim, the Court should dismiss the Petition for failure to exhaust state court remedies. (Limited Answer at 1, ECF No. 4). Thomas stated in his Response, "I don't want to withdraw my Petition." (Resp. at 1, ECF No. 6). Thomas subsequently filed a "Motion to Hold in Abeyance," which sought either a stay of the case or for "the Court to withdraw" his Brady claim and rule on the merits of his other claims. (Mot. Hold Abeyance at 1, ECF No. 7). The Court denied Thomas' request to hold the case in abeyance and directed Respondents to address the merits of Thomas' claims. (Dec. 18, 2018 Order at 1, ECF No. 10). Respondents filed a Supplement to the Limited Answer on January 24, 2019. (ECF No. 14).

---

[2] Brady v. Maryland, 373 U.S. 83 (1963) (holding suppression by the prosecution of evidence favorable to the accused violates due process of law).

## II.     STANDARD OF REVIEW

### A.     Section 2254 Standard

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough. v Alvarado, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent

4

judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) (citing Williams, 529 U.S. at 411). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Brumfield v. Cain, 576 U.S. 305, 314 (2015) (stating a federal court must "accord . . . substantial deference" to state-court factfinding in habeas review) "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 373, 378 (4th Cir. 2010).

**B.     Exhaustion**

Habeas relief under § 2254 may not be granted unless a petitioner has exhausted state court remedies. 28 U.S.C. § 2254(b)(1). "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982) (citing Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 490–91 (1973)). "Under our federal system, the federal and state 'courts [are] equally bound to guard and protect rights secured

by the Constitution.'" Id. (alteration in original) (quoting Ex parte Royall, 117 U.S. 241, 251 (1886)). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Id. (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Thus, the Supreme Court has cautioned litigants: "before you bring any claims to federal court, be sure that you first have taken each one to state court." Id. at 520; see also O'Sullivan v. Boerckel, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court."). Notwithstanding the failure of a petitioner to exhaust state court remedies, however, a court may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2).

### III.   DISCUSSION

**A.   Ineffective Assistance of Counsel**

In his Petition, Thomas raises two clams for ineffective assistance of counsel: first, that trial counsel was ineffective for failing to object to his right to be present during voir dire, and second, that appellate counsel was ineffective for failing to seek on direct appeal plain error review of the alleged violation of his right to be present. Respondents contend that these claims fail to meet the standard for federal habeas relief. The Court agrees with Respondents.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397

U.S. 759, 771 n.14 (1970)). To establish ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Id. at 687. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. The principles governing claims of ineffective counsel apply equally in federal collateral proceedings as they do on direct appeal or in a motion for new trial. See Strickland, 466 U.S. at 697.

Thomas' first ineffective assistance of counsel claim stems from a statement the trial judge made during voir dire:

> <u>Now I know we've discussed this with some of you, so if you already have uh, you don't need to respond again</u>, but the question is for those of you with whom we have not discussed it, associations with law enforcement. So uh, have you or members of your immediate family been employed by law enforcement agencies which would include the Maryland State Police, military police, FBI, Secret Service uh, U.S. Attorney's Office, State's Attorney's Office. Any, any of you have those types of employment? Also would include corrections uh, the local jail, which I know we have three jails, two, two state and one prison.

(Suppl. Answer Pet. Writ Habeas Corpus ["Suppl. Answer"] Ex. 1 ["Jan. 29, 2014 Trial Tr."] at 63:16–64:4, ECF No. 14-1 (emphasis added); see also Post-Conviction Op. at 2). According to Thomas, he did not recall any prior discussion about jurors' potential connections to law enforcement; thus, the judge's statement that the court had already

7

"discussed [associations with law enforcement] with some of [the jurors]" indicated that some of voir dire had taken place outside of Thomas' presence.

Thomas raised this precise claim in his post-conviction petition before the Circuit Court. There, the post-conviction court rejected Thomas' arguments, noting trial counsel's testimony that Thomas was in the courtroom for all of voir dire, and to the best of his recollection, at no time was voir dire conducted out of Thomas' presence. (Post-Conviction Op. at 2). The post-conviction court also reasoned that:

> [C]ontrary to the assertion that there was no previous inquiry on the subject, the transcript reflects several prior instances of inquires of this nature. It would appear that the trial judge's comments related to previous inquires made to the venire regarding their knowledge of potential witnesses, some of whom were employed in the law enforcement field (See Transcript at pages 30, 32, 34, 36 and 48). This Court is satisfied that the trial judge's later statement was taken out of context, and that there was no discussion with the venire outside of the petitioner's presence. Upon these factual findings, the Court concludes that the Petitioner has failed to establish that Counsel's performance fell below an objective standard of reasonableness, as required by the Strickland test.

(Id.).

In addition to his claim for ineffective assistance of trial counsel, Thomas also presented his claim for ineffective assistance of appellate counsel to the post-conviction court. The post-conviction court denied this claim, finding that it was "based on the same factual claim" as his challenge to trial counsel's conduct and therefore was also without merit. (Id. at 2–3).

The decision by the post-conviction court here was not contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in

8

light of the evidence presented in the post-conviction proceedings. See 28 U.S.C. § 2254(d). Indeed, the post-conviction court's factual findings are clearly supported by the trial transcript, which establishes Thomas' presence during voir dire. It appears that Thomas was present in the courtroom before the prospective jurors arrived because the trial judge greeted him by name and instructed a sheriff's deputy to remove his handcuffs and shackles. (Jan. 29, 2014 Trial Tr. at 3:2). After the judge resolved motions in limine, prospective jurors entered the courtroom and a roll call was conducted. (Id. at 16:2–22:15). The judge then advised the prospective jurors that the case was a criminal prosecution of Thomas and told them, "Mr. Thomas is this gentleman right here." (Id. at 24:13–14). The judge instructed Thomas to stand so the jurors could see him, and then told him he could be seated. (Id. at 24:14–17). The judge announced the names of the anticipated witnesses in the case and asked if the prospective jurors knew any of them. (Id. at 25:18–26:19). A significant number of prospective jurors disclosed at the bench that they knew one or more of the witnesses through the jurors' own employment in corrections or a related field, or otherwise disclosed a personal connection to law enforcement in response to the inquiry. (Id. at 27:7–50:12).

Before interviewing the second prospective juror who reported knowing a witness, the trial judge acknowledged Thomas' presence by stating:

> Mr. uh, Thomas, while we're at it. Anytime we're up here at the bench, you're welcome to come up with your attorneys. You don't have to come up. If you choose to stay back there at the counsel table, that's fine. I will just view that by you as a waiver by you of your right to be here at the bench, but you're welcome to be here anytime these gentlemen [i.e., the prosecutor and defense counsel] are.

9

(Id. at 30:13–19).

Thomas' allegation that he was absent during voir dire is directly refuted by the record. Thus, Thomas does not provide "clear and convincing" evidence that the post-conviction court's factual findings were incorrect, nor can it be said that the post-conviction court unreasonably determined the facts in light of the evidence before it. See 28 U.S.C. §§ 2254((e)(1), (d)(2). Counsel's failure to raise meritless claims does not amount to ineffective assistance. See Sharpe, 593 F.3d at 383 (noting that failing to file futile motions is not ineffective assistance). Accordingly, Thomas' ineffective assistance claims provide no grounds for federal habeas relief and must be denied.

**B.    Brady Claim**

Respondents contend that Thomas' Brady claim is unexhausted and otherwise fails to state a colorable claim for relief. Thomas, for his part, does not respond to Respondents' exhaustion argument. A federal court may deny a petition for a writ of habeas corpus on the merits, notwithstanding the applicant's failure to exhaust all state court remedies. 28 U.S.C. § 2254(b)(2). The Court will, therefore, briefly address the merits of Thomas' Brady claim.

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. As the Fourth Circuit has explained:

10

> There are three fundamental components to a Brady claim: (1) 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the 'evidence must have been suppressed by the State'; and (3) the evidence must be material to the defense, that is, "prejudice must . . . ensue[].

Walker v. Kelly, 589 F.3d 127, 137 (4th Cir. 2009) (alteration in original) (quoting Strickler v. Greene, 527 U.S. 263, 281–82 (1999)). Although late disclosure of evidence might violate the prosecution's discovery obligations, "there is no Brady violation if the defense is aware of the evidence in time to reasonably and effectively use it at trial." United States v. Jeffers, 570 F.3d 557, 573 (4th Cir. 2009) (finding no Brady violation when audiotapes disclosed to the defense mid-trial).

In his Petition, Thomas states that the "compact disc of said incident given to the internal investigative unit on 5-3-2013 and placed in evidence on 7-1-2013 was not the same disc used at trial[.] The trial disc was copied by a Sgt. Zarger, the evidence disc was copied on 4-29-2013 by a Sgt. Colin Detrick[.]" (Pet. at 5).

The trial transcript shows that there were indeed two compact discs containing video footage of the April 29, 2013 stabbing incident on which Thomas' convictions are based. On the first day of trial, Sergeant James Zarger, a correctional officer at NBCI, authenticated a compact disc, marked for identification as State's Exhibit 1, as containing an "archive" of video footage of the "incident [the attack and stabbing] that happened on April [29, 2013] at NBCI" (the "Zarger Disc"). (Jan. 29, 2014 Trial Tr. at 150:6–151:22). Zarger testified that pursuant to the investigating officer's specified location, cameras, and time period of interest, he saved the relevant video footage on a hard drive, and then burned

11

the archive onto a compact disc. (Id. at 151:15–22). Zarger testified that he did not alter the video footage in any way when he created the disc. (Id. at 152:1–3). Zarger testified that he created the disc on October 17, 2013. (Id. at 154:22).

Defense counsel showed Zarger a document marked as Defense Exhibit #1, which Zarger identified as a chain of custody form. (Id. at 155:5–16). The form documented the chain of custody for "[o]ne compact disk of evidence on 4, 4-D Tier." (Id. at 156:6). Zarger testified that he had never created a chain of custody form for the Zarger Disc and, as far as he knew, no such form existed for it; rather, he had simply created the disc and mailed it to the State's Attorney. (Id. at 156:10–17). Thus, the chain of custody form did not relate to the Zarger Disc. Instead, the chain of custody form referred to a disc that was created on May 3, 2013, shortly after the stabbing incident (the "Fagan Disc"). (Id. at 159:12–15). The Fagan Disc was in the custody of Detective Fagan, an investigator with the Internal Investigation Unit ("IIU"), and Sergeant Detrick, another officer at NBCI with access to video archive equipment. (Id. at 158:3–20).

After Zarger's testimony, defense counsel informed the trial court that it appeared there "was a disk that was created at some point in time"—i.e., the Fagan Disc—that had not "been produced to" the defense. (Id. at 160:13–15). In response, the State proffered that while Detective Fagan was on leave to care for an ill family member, the State had "asked IIU if there was a way we could get a dis[c]." (Id. at 161:6–12). The State explained: "We got that dis[c]. We gave it to counsel, but we tried to then use—there's some kind of encryption on the dis[c]." (Id. at 161:13–15). Because the State was unable to access the encrypted footage on the Fagan Disc, prosecutors contacted NBCI and obtained the Zarger

12

Disc. (Id. at 161:15–21). The prosecutor proffered to the trial court that the footage provided to the defense in discovery "was the same as the dis[c] that Sergeant Zarger made." (Id. at 162:16–19). Defense counsel then stated:

> I don't have any doubt that the copy they provided to us is the copy they're seeking to admit. My only concern is there's another version, another copy if you will, of these events that were made prior to this version, and I think it would only be appropriate thing [sic] is that there may be exculpatory information on the dis[c] or at least impeachable as to how this process were [sic] if we have an opportunity to review that prior to. Uh, we're certainly not seeking a mistrial at this point because of a Brady violation, only that (inaudible) at least an opportunity to review it before that information is presented to the jury.

(Id. at 162:20–163:8).

The trial court admitted the Zarger Disc into evidence, noting that Zarger's testimony established that the video was an "accurate version" of the "events of April [29, 2013]." (Id. at 163:9–14). The trial court noted that although no grounds to deny admission of the Zarger Disc were offered, the possibility of a different version of the footage on the Fagan Disc "creates other issues," such as "possibly Brady" or "other discovery violations." (Id. at 163:15–164:1). The prosecutor told the court that Detective Fagan was at the courthouse and had with him the "initial disk that was given to him"—i.e., the Fagan Disc. (Id. at 164:9–10). The prosecutor then stated his belief that the video footage on the Fagan Disc was a "copy" of the footage on the Zarger Disc, meaning it was from the same camera, from the same angles, and for the same time period. (Id. at 164:15–22). The judge said he would give defense counsel an opportunity to review the Fagan Disc during a recess, explaining that, "if it turns out to be something other than a copy, then . . . we'll

deal with whatever is brought . . . up at that point." (Id. at 165:2–8). At the end of the day, the court dismissed the jury and allowed the prosecutors and defense counsel to remain in the courtroom to view the Fagan Disc. (See id. at 301:21–22).

On the next day of trial, counsel did not raise any issues about the Fagan Disc. Detective Fagan testified about his IIU investigation of the stabbing incident, including that he had "reviewed . . . surveillance video" of the incident. (Suppl. Answer Ex. 2 ["Jan. 30, 2014 Trial Tr."] at 58:15–20; ECF No. 14-2). Neither defense counsel nor the prosecution questioned him about the Fagan Disc, and the Fagan Disc was not introduced into evidence.

At bottom, the record shows that the prosecution did not withhold information in violation of Brady. The content of the Fagan Disc was disclosed to the defense during trial, and defense counsel had the opportunity to review the Fagan Disc before Detective Fagan testified. Had there been discrepancies between the video footage on the Fagan Disc and the Zarger Disc, defense counsel had the opportunity to introduce the Fagan Disc, question witnesses, or seek other relief from the trial court. Notably, Thomas does not allege what the Fagan Disc contained, how this information was exculpatory or impeaching, or whether it would have been material to the outcome of his defense. Because Thomas fails to state a colorable Brady claim, and because this claim is unexhausted, Thomas is not entitled to federal habeas relief.

C.   **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse

to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Buck v. Davis, 137 S.Ct. 759, 773 (2017); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S.Ct. at 773 (citation omitted).

Thomas has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Thomas may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003).

## IV.   CONCLUSION

For the above reasons, the Petition will be denied and a Certificate of Appealability will not issue. A separate Order follows.

Entered this 25th day of February, 2021.

                                                        /s/_____
                                            George L. Russell, III
                                            United States District Judge